## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

**Jane R. King,**

**Plaintiff,**

**COMPLAINT**

**v.**

**State of Wisconsin**
**Department of Corrections,**

**Case No. 16 CV 89**

**Defendant.**

The Plaintiff, Jane R. King, by and through her attorneys, Bakke Norman, S.C., by Peter M. Reinhardt, states and complains of the Defendant, State of Wisconsin, Department of Corrections, as follows:

### PARTIES TO THE ACTION

1.  Plaintiff, Jane R. King, is an adult individual of the State of Wisconsin and resides at 16870 172nd Ave., Jim Falls, Wisconsin.

2.  Defendant, State of Wisconsin, Department of Corrections, is a Wisconsin executive branch state agency.  Its principal place of business is located at 3099 E. Washington Ave., Madison, Wisconsin.

3.  The State of Wisconsin Department of Corrections receives federal funding for some of its programs and activities, including programs associated with the employment positions at the Department of Corrections.

### NATURE OF ACTION

4.  Plaintiff, Jane King, claims the Defendant, State of Wisconsin Department of Corrections, failed to accommodate her disability in violation of the Rehabilitation Acts of 1973, 29 U.S.C. § 794 and the Americans with Disabilities Act, 42 U.S.C. § 12112 (b)(5);

discriminated against her in the terms and conditions of her employment in violation of the Rehabilitation Act of 1973, 29 U.S.C. § 794 and the Americans with Disabilities Act, 42 U.SC. § 12112 (a) and (b); and retaliated against her for exercising her rights, by requesting accommodations, in violation of the Rehabilitation Act of 1973, 29 U.S.C. §794 and the Americans with Disabilities Act, 42 U.S.C. § 12203.

5.   Plaintiff, Jane King, claims the Defendant, State of Wisconsin Department of Corrections, discriminated against her in the terms and conditions of her employment based on her gender, in violation of Title VI of the Civil Rights Act, as amended, 42 U.S.C. § 2000e-2.

6.   Plaintiff claims that Defendant retaliated against her for opposing discriminatory employment practices in violation of 42 U.S.C. § 2000e -3.

7.   Plaintiff, Jane King, filed a complaint with the Department of Workforce Development, Equal Rights Division, on July 17, 2014, Case No. CR20140229, and cross-filed with the EEOC, Case No. 26G-2014-01143, claiming the State of Wisconsin Department of Corrections discriminated against her based on disability and failed to reasonably accommodate her disability, discriminated against her in terms and conditions of her employment based on her gender and retaliated against her for opposing gender discrimination in the workplace.

8.   Plaintiff, Jane King, received a Notice of Right to Sue from the EEOC on November 19, 2015, with respect to the complaint identified in paragraph seven.

## JURISDICTION & VENUE

9.   Jurisdiction in this court is proper as this case presents federal questions and controversy. Venue in the Western District of Wisconsin is appropriate because the conduct giving rise to Plaintiff's claims occurred in this district.

## ALLEGATIONS

10.  In 2003, Plaintiff began her employment with Defendant, State of Wisconsin, Department of Corrections, in its prison industries program, Badger State Industries (BSI), as the Signage Industry Supervisor in Stanley, Wisconsin.

11.  From March of 2003 until January of 2004, Plaintiff worked exclusively at the Waupun Correctional Facility in order to facilitate the move of the signage industry from the Waupun Correctional Facility to the Stanley Correctional Facility.

12.  From 2004 through February of 2014, Lyle Peplinski was a Superintendent at BSI and Plaintiff's direct supervisor.

13.  From January of 2004 through August of 2007, Plaintiff worked as a Signage Industry Supervisor in Stanley, Wisconsin.

14.  In 2007, Plaintiff injured her back on the job.  Following her injury, Plaintiff underwent two back surgeries – one on December 18, 2007, a right sided L5, S1 discectomy, and one on March 30, 2009, a L5, S1 decompression with bilateral foraminotomy.

15.  Plaintiff took time off work for each surgery and to recuperate from each surgery.

16.  Despite the surgeries, Plaintiff continued to suffer from pain associated with her back, as well as limitations on her physical abilities.

17.  Following her second surgery, Plaintiff returned to work on June 2, 2009, and was issued permanent work restrictions. The written work restrictions were provided to Defendant.

18.  Plaintiff's back impairment substantially affects her ability to sit, stand and drive.

19.  Plaintiff King is an individual with a disability as that term is defined by the Vocational Rehabilitation Act of 1973, 29 U.S.C. § 705(20)(B) and the Americans with Disabilities Act, 42 U.S.C. § 12102 (2).

3

20. Plaintiff King was able to perform the essential functions of her job, as a Signage Industry Supervisor, with or without accommodation.

21. At all relevant times, Defendant was aware that Plaintiff suffered back pain from her back injury and impairments and was aware that Plaintiff was an individual with a disability within the meaning of the Vocational Rehabilitation Act of 1973 and the Americans with Disabilities Act.

22. In May of 2010, Plaintiff King was administratively reassigned to the Chippewa Valley Correctional Facility as an Industry Supervisor in Laundry.

23. In 2012, Plaintiff was informed that the Laundry at the Chippewa Valley Correctional Facility was going to be closed, and that she would frequently be "on the road" as a signage supervisor. At that time, in response, Plaintiff informed Defendant that frequent driving would be problematic given her back conditions.

24. After the laundry closed in June or July of 2013, Plaintiff King was transferred back to the Stanley Correctional Facility to the position of Signage Industry Supervisor.

25. On August 27, 2013, Plaintiff received written notification that she was being temporarily reassigned to the Jackson Correctional Facility in Black River Falls, due to its Signage Supervisor being on an extended leave of absence.

26. The proposed reassignment involved a significant amount of driving from Plaintiff's home to Black River Falls, Wisconsin.

27. Immediately after she was informed of the reassignment to Black River Falls, Plaintiff King informed Superintendent Lyle Peplinski, that the drive associated with the reassignment would be difficult for her because of her back injuries.  Plaintiff also questioned why she was being required to be on-site at Black River Falls when Peplinski's office was at the Black River

Falls Correctional Facility, he lived in Black River Falls and he frequented the Black River Falls Facility.

28. Superintendent Lyle Peplinski ignored Plaintiff's comments and concerns.

29. After the reassignment to Black River Falls, Plaintiff's compute from her home in Jim Falls to Black River Falls took about 90 minutes, one way.

30. In addition to driving to Black River Falls, Plaintiff was required to drive, once a week, to the correctional facility in New Lisbon. The commute to New Lisbon, from Plaintiff's home, took about two hours, one way.

31. Plaintiff King worked the temporary reassignment to Black River Falls for approximately six weeks.

32. The driving associated with the Black River Falls assignment significantly aggravated and exacerbated Plaintiff's back impairments.

33. On September 26, 2013, Plaintiff King sent an e-mail to Superintendent Peplinski informing him, again, that she was having a difficult time with the drive, every day. In response, Peplinski instructed Plaintiff King to get a doctor's slip.

34. Plaintiff obtained a letter from her physician, Dr. Ippel. The October 10, 2013 letter recommended not having Plaintiff King drive long distances to work, including to Black River Falls or further, because of her back conditions.

35. Plaintiff King faxed Dr. Ippel's October 10, 2013, letter to Paula Tiruveedula, in Respondent's Human Resources Department, in Madison.

36. In response, Tiruveedula sent Dr. Ippel a letter with questions for further details and clarification about Plaintiff's impairment. Dr. Ippel responded and answered Tiruveedula's questions.

37. While awaiting a response to her accommodation request, one week later, on October 17, 2013, Plaintiff King was notified, via e-mail from Tiruveedula, that Plaintiff was to continue to report to work at the Jackson Correctional Facility in Black River Falls, and once a week to the New Lisbon Correctional Facility.

38. Plaintiff was transferred back to Stanley Correctional Facility, from her temporary assignment, on October 22, 2013.

39. On October 28, 2013, Plaintiff King signed a formal Disability Accommodation Request form relating to her driving distance restriction and faxed it to Defendant.

40. On November 4, 2013, after Plaintiff King transferred back to the Stanley Correctional Facility, her job description, as Signage Industry Supervisor, was revised to, for the first time, require significant driving and travel.

41. At or around the time that Plaintiff received the revised job description, she was informed that driving was now, for the first time, an essential function of her employment position.

42. Plaintiff King was the only Industry Supervisor whose position description required significant driving and travel.

43. The purpose and intent of the Defendant's change in Plaintiff's job description was to cause her to be unable to continue in her position as Signage Industry Supervisor.

44. Shortly after Plaintiffs return to the Stanley Correctional Facility in 2013, two male Industry Specialists, Bill Huber and Greg Stieger, reported to Plaintiff King.

45. Shortly after Plaintiff's return to the Stanley Correctional Facility in 2013, Defendant purposefully engaged in actions that had the effect of removing the majority of Plaintiff's duties and responsibilities and delegating them to her male subordinates.

46. With the permission and consent of Superintendent Peplinski, Huber and Stieger typically would not communicate with Plaintiff King and generally chose to ignore her. When they didn't ignore her, Huber and Stieger were verbally abusive to Plaintiff King and would challenge directives or instructions given by her.

47. Plaintiff King's direct report, Supervisor Lyle Peplinski, would ignore her; not provide information she needed to perform her job; and meet with the two male specialists, while excluding Plaintiff. In addition, Peplinski generally did not support Plaintiff's management decisions and frequently overrode her decisions.

48. The actions and omissions of Supervisor Lyle Peplinski created a hostile work environment for Plaintiff, based on her gender, and substantially interfered with her ability to perform her job as Signage Supervisor.

49. On October 3, 2013, Plaintiff called the Corrections Service Manager, Doug Percy, and complained of verbal abuse and gender discrimination by Peplinski, Huber and Stieger.

50. On November 13, 2013, Plaintiff King again complained of discrimination and gender bias to Peplinski's immediate supervisor, Prison Industry Director, Earl Fischer.

51. Plaintiff King never received any response to her complaints of gender bias and discrimination. Rather, Defendant's management personnel held "mediation" sessions with Plaintiff in which they told Plaintiff she was a poor manager.

52. On December 12, 2013, Plaintiff King exchanged e-mails with Supervisor Peplinski regarding a sign installation that needed to be done in Appleton and her concerns about driving.

53. Peplinski responded that the issues needed to be resolved or it puts Plaintiff at risk for

being "unfit for duty."

54.  Plaintiff King replied that in the past 10 plus years as an Industry Supervisor that job function (travel) hadn't been a part of her job description.  She also indicated that, in prior years, travel was limited to three to four times a year.

55.  In January of 2014, Plaintiff King scheduled a limited term employee to drive the signs to Appleton.  Supervisor Peplinski insisted that Plaintiff King drive the signs to Appleton and would not allow the limited term employee to deliver the signs.

56.  Plaintiff King delivered the signs to Appleton, as instructed by Supervisor Peplinski.  The drive to Appleton and back to Stanley took approximately seven hours.

57.  The following day, Plaintiff King experienced extreme back pain and sought medical treatment.  Based on this, Dr. Ippel issued another letter to Tiruveedula, dated February 4, 2014, requesting accommodations be made with respect to Plaintiff's drive time as it relates to her job.

58.  On February 13, 2014, Plaintiff was called into the Warden's Office.  At that time, she was informed she was "unfit for duty" and placed on administrative leave, without pay.

59.  On February 14, 2014, Plaintiff King received a letter from the Bureau of Correctional Enterprises informing Plaintiff that her impairment caused her to be unfit in her current position.  As a result, Plaintiff was involuntarily demoted to a Finance Specialist 4.

60.  The Finance Specialist 4 position was a sedentary position, which required Plaintiff to sit for extended periods of time, in violation of her permanent work restrictions.

61.  Plaintiff verbally requested the accommodation of a sit/stand desk in her position as Finance Specialist, and Defendant failed and refused to provide this accommodation.

62.  As a result of Defendant's failure to provide the requested accommodation, Plaintiff's

back impairments were aggravated, exacerbated and further deteriorated, resulting in Plaintiff being forced to resign from her position.

63. Defendant's conduct described herein was attended by circumstances of willful and reckless disregard of Plaintiff's federally created rights.

## FIRST CAUSE OF ACTION:
### FAILURE TO PROVIDE REASONABLE ACCOMMODATION
### (29 U.S.C. §794 AND 42 U.S.C. §12112(b)(5))

64. Plaintiff realleges and incorporates all previous paragraphs.

65. Defendant failed to make reasonable accommodations for Plaintiff King, which failure constitutes a violation of 29 U.S.C. § 794 and 42 U.S.C. § 12112(b)(5).

66. Plaintiff King has suffered and continues to suffer pecuniary and emotional harm, and pain and suffering, as a result of Defendant's conduct.

## SECOND CAUSE OF ACTION:
### DISCRIMINATION IN TERMS AND CONDITIONS OF EMPLOYMENT
### (29 U.S.C. §794 And 42 U.S.C. § 12112(a))

67. Plaintiff realleges and incorporates all previous paragraphs.

68. Defendant discriminated against Plaintiff, in the terms and conditions of employment, by declaring her unfit for duty and demoting her to a different employment position, in violation of 29 U.S.C. §794 and 42 U.S.C. § 12112(a).

69. Plaintiff King has suffered and continues to suffer pecuniary and emotional harm, and pain and suffering, as a result of Defendant's conduct.

## THIRD CAUSE OF ACTION:
## RETALIATION FOR ASSERTING RIGHTS TO ACCOMMODATION
### (29 U.S.C. §794 And 42 U.S.C. § 12203)

70.  Plaintiff realleges and incorporates all previous paragraphs.

71. Defendant retaliated against Plaintiff, for exercising her rights to reasonable accommodation, by declaring her unfit for duty and demoting her to a different employment position, in violation of 29 U.S.C. § 794 and 42 U.S.C. § 12203.

72.  Plaintiff King has suffered and continues to suffer pecuniary and emotional harm, and pain and suffering, as a result of Defendant's conduct.

## FOURTH CAUSE OF ACTION:
## GENDER DISCRIMINATION AND HOSTILE WORK ENVIRONMENT
### (42 U.S.C. § 2000e-2)

73.  Plaintiff incorporates and realleges all prior paragraphs.

74.   Defendant discriminated against Plaintiff in the terms and conditions of her employment, by creating and permitting a hostile work environment based on gender.

75. Defendant intentionally discriminated against Plaintiff based on her gender in violation of 42 U.S.C. § 2000e-2.

76.  Plaintiff King has suffered and continues to suffer pecuniary and emotional harm, and pain and suffering, as a result of Defendant's conduct.

## FIFTH CAUSE OF ACTION
## RETALIATION FOR OPPOSING DISCRIMINATORY CONDUCT
### (42 U.S.C. § 2000e -3)

77.  Plaintiff realleges and incorporates all previous paragraphs.

78.  Plaintiff King opposed what she reasonably believed to be unlawful and discriminatory employment practices based on her gender, and Defendant was aware of her opposition.

79. Defendant retaliated against Plaintiff for opposing discriminatory employment practices by declaring her unfit for duty and demoting her to a different employment position.

80. Defendant's conduct was a violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e -3.

81. Plaintiff has suffered and continues to suffer emotional and pecuniary harm as a result of Defendant's actions.

WHEREFORE, Plaintiff, Jane King, respectfully requests the following relief:

A. Back pay;

B. Compensatory damages;

C. Appropriate injunctive relief;

D. Pre-judgment interest;

E. Attorney's fees and costs;

F. Such other further relief as the Court deems appropriate.

**A JURY TRIAL IS DEMANDED**

Dated: ___2/9/16_____

BAKKE NORMAN, S.C.

By: _____
Peter M. Reinhardt
Attorney No. 1025187
2919 Schneider Avenue SE, P.O. Box 280
Menomonie, WI  54751-0280
(715) 235-9016
preinhardt@bakkenorman.com

Attorneys for Jane R. King